IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:
GARY S. KATZMANN, JUDGE, TIMOTHY REIF, JUDGE, JANE A. RESTANI, JUDGE

| | |
|---|---|
| AGS COMPANY AUTOMOTIVE SOLUTIONS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants. | Consol. Court. No. 25-00255 |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiffs submit this reply in further support of their motion for a preliminary injunction to prevent the United States' final liquidation of tariffs that Plaintiffs allege are unlawful. The Government's response confirms that, absent an injunction, liquidation will proceed as a ministerial act that ordinarily fixes the IEEPA tariff liability at issue and transfers associated revenue to Treasury—thereby creating precisely the remedial obstacles that this Court and the Federal Circuit have repeatedly recognized as irreparable harm. The Government's assertion that Plaintiffs may later seek reliquidation rests on assumptions about post-liquidation remedies that are not settled as a matter of law and ignores that such relief is extraordinary, uncertain, and inadequate to prevent the loss of an effective remedy.

1

It is also hard to put faith in the Government's claim that implementing a suspension of liquidation is burdensome. CBP routinely administers far more complex suspension instructions and injunctions using straightforward parameter-based logic. As addressed below, the Government's affidavit conflates post-liquidation, entry-specific remedial processes with the prospective, status-quo preserving relief Plaintiffs seek here.

Nor is this a case of delay. Plaintiffs raised the risk of imminent liquidation months ago and sought administrative relief before turning to this Court. Throughout October and early November, many Plaintiffs specifically requested that Customs and Border Protection extend liquidation of the entries at issue; CBP declined to do so. *See*, *e.g.*, Complaint, AGS Co. Automotive Solutions v. United States, Consol. Ct. No. 25-00255, ECF No. 3 ¶ 68. Plaintiffs then sought judicial relief promptly once it became clear that liquidation would proceed and no administrative accommodation would be granted. It is worth noting that prior to requesting injunctive relief, Plaintiffs also first requested and proposed that Defendants simply agree to extend liquidation of all of Plaintiffs' entries pending resolution of these issues. Defendants have steadfastly refused even this relatively simple and straightforward administrative mechanism to preserve the status quo, and notably do not contend in their response that such an extension would be as burdensome as implementing injunctive relief.

This case is materially different from the Section 301 litigation on which Defendants implicitly rely. See Defendant's Opposition at 8 (discussing in re Section 301 cases), ECF No. 25. In the Section 301 cases, those plaintiffs sought injunctive relief only after liquidation of many entries had already occurred. Here, by contrast, Plaintiffs seek a preliminary injunction precisely to prevent that scenario, having already raised the risk administratively months in advance, and having found no relief at the agency level. Plaintiffs are not late to the table – they

are here early, for the express purpose of preserving the Court's ability to grant effective relief without forcing the parties, or the Court, into remedial uncertainty that followed liquidation in the Section 301 context. Because the requested injunction preserves the status quo, ensures the availability of meaningful relief, and imposes no undue administrative burden, the Court should grant the motion and enter the proposed order.

## ARGUMENT

I. **THE GOVERNMENT'S POSITION THAT PLAINTIFFS SHOULD WAIT FOR LIQUIDATION AND THEN SEEK RELIQUIDATION IS LEGALLY UNSOUND AND DEPENDS ON UNCERTAIN POST-LIQUIDATION AUTHORITY**

The Government argues that a preliminary injunction is unnecessary because Plaintiffs may seek post-liquidation relief—namely, court-ordered reliquidation—after CBP performs the ministerial act of liquidation that will fix and collect the IEEPA tariff amounts Plaintiffs challenge as unlawful.

The Government suggests that Plaintiffs may safely allow liquidation to occur because the Court can later order reliquidation if the IEEPA tariffs are held unlawful. That would indeed be welcome news if it were a foregone conclusion that such authority unquestionably exists and will remain available in this posture. But it is not. As this Court and the Federal Circuit have recognized, liquidation alters the legal landscape by triggering statutory finality rules that constrain jurisdiction and remedial options. *See* ECF 10, at 5-7.

Whether reliquidation is available depends on a complex interaction of statutory authority, jurisdictional posture, equitable principles, and the nature of the underlying claim—questions that are neither settled nor automatic, particularly where the Government itself acknowledges that relief would require a "final and unappealable" decision. The Government

3

dismisses the concerns of Plaintiffs as overblown and not supported. But as recently as this year, this Court declined to order reliquidation of entries that had liquidated notwithstanding a suspension order, underscoring that liquidation can fundamentally alters the remedial landscape. See *Solar Energy Indust. Assn. v. Unites States*, Slip Op. 25-57, No. 20-039 (Ct. Intl. Trade May 8, 2025).[1] Plaintiffs should not be required to forgo relief and gamble on the uncertain availability of a post-liquidation remedy when suspension of liquidation is the established mechanism for preserving the Court's ability to grant effective relief.

The prophylactic relief Plaintiffs seek is both available and routine in this Court and the ordinary mechanism for preventing the potential prejudice of liquidation in the first instance.

## II. THE GOVERNMENT'S CLAIMS OF ADMINISTRATIVE BURDEN ARE UNSUPPORTED AND CONTRADICTED BY ROUTINE AGENCY PRACTICE

The Government asserts that the requested injunction would be impossibly burdensome for CBP to administer. (ECF No. 25 at Attachment 1). That assertion is difficult to reconcile with decades of ordinary, repeatable agency practice.

### A. CBP implements complex suspension instructions every day

In antidumping and countervailing duty proceedings, the Commerce Department routinely instructs CBP to suspend liquidation for entire case numbers, often across multiple companies, exporters, importers, and time ranges. These instructions are implemented through basic parameter-based logic in CBP's system. Thousands of such suspensions occur every year.

---

[1] Statements by senior USTR officials indicate that the Government is not actually so certain whether refunds will be available if entries liquidate, suggesting that some plaintiffs might receive refunds in certain instances, while for others the outcome might depend on whether Treasury has the requisite authority or resources. See, *e.g.*, Reuters, "*USTR: Treasury would sort out any refunds if top court nixes Trump's tariffs*" (Nov. 6, 2025) (USTR stating "in some situations, the plaintiffs, specific plaintiffs, will get a refund," but that it would be left to the Treasury Department to work out any payment schedule and coordinate with the courts on any potential refunds).

*See, e.g.*, U.S. Department of Commerce Message No. 92733077 (instructing U.S. Customs and Border Protection to "suspend liquidation of entries of subject merchandise, entered, or withdrawn from warehouse, for consumption, on or after 9/25/2019" and to require cash deposits at specific rates for named companies, and for "all others", in accordance with a preliminary determination in a trade remedy proceeding.) Subject merchandise is defined in such messages through an extensive narrative description and multiple HTS codes, which may be over-inclusive as to subject merchandise.

Likewise, when Commerce initiates an administrative review, CBP suspends liquidation for all entries associated with the relevant company-specific case numbers for long lists of companies. This process is not burdensome—it is a normal feature of tariff administration. For example, in a single administrative review of Canadian softwood lumber, CBP was instructed that, "until further notice," entries covering a full year of imports for well over 300 separately named companies were not to be liquidated. See CBP Message No. 5324406 (Nov. 20, 2025). CBP implements such instructions as a matter of course using straightforward parameters tied to company identifiers, products, and date ranges.

In this same way, CBP routinely implements court-ordered injunctions suspending liquidation. For example, in response to a statutory injunction issued by this Court in *Certain Aluminum Foil from the Sultanate of Oman*, CBP instructed that, effective immediately, "no liquidation may be made" for covered entries and further directed that any entries already "set for liquidation must be unset immediately." *See* CBP Message No. 5329411 (Nov. 25, 2025). CBP continued suspension pending further instructions, demonstrating that court-ordered suspension of liquidation is operationally routine and readily implemented through existing systems.

5

The injunction sought here fits squarely within that framework. Plaintiffs' requested injunction rests on two parameters: (1) HTS codes covering the IEEPA tariff provisions, and (2) importer-of-record numbers identifying Plaintiffs.  Counsel for Plaintiffs have maintained a complete list of importer-of-record numbers for each named Plaintiff and are prepared to provide that information to the Court and Defendants, under seal, to facilitate implementation of the injunction.  As evidenced in the above-cited examples, CBP implements instructions more complex than this on a routine basis.

> **B.     The Government's proposed alternative is far more burdensome than the requested injunction**

Rather than implement a single programmatic suspension instruction, the Government proposes allowing liquidation to occur and then attempting to correct entries one-by-one through potential reliquidation.  This approach appears to conflate entry-specific, post-liquidation remedial processes with the prospective relief requested by Plaintiffs.  The existence of informal entries does not alter this analysis.   There is nothing to show that the subset of informal entries in CBP's system are at issue here, nor would that fact transform suspension of liquidation into an unworkable remedy for Plaintiffs in this action.  Even if some informal entries were made by any one Plaintiff, that does not justify forcing them to rely solely on post-liquidation correction for all of their entries subject to IEEPA tariffs.   Moreover, the reliquidation alternative the Government claims to prefer would in fact require continuous monitoring, individualized adjustments, and would create the administrative burdens described in Defendant's affidavits.  The reliquidation burden on the Government is far greater than those associated with a single parameter-based suspension instruction.  By contrast, the injunction Plaintiffs seek imposes one clear direction: if an entry meets parameters A and B, CBP shall suspend liquidation.

The Government thus rejects the simpler, standardized approach in favor of a far more administratively burdensome alternative. That contradiction underscores the weakness of its position.

### III.  THE REQUESTED INJUNCTION IS NARROW, WORKABLE, AND FULLY ALIGNED WITH CBP'S ESTABLISHED PRACTICES

Plaintiffs seek a narrowly tailored injunction directing CBP to suspend liquidation for entries meeting two objective criteria:

1. The entry is classified under an HTS code subject to the IEEPA tariffs; and
2. The importer of record is a plaintiff, as identified by IOR number(s).

This approach aligns with CBP's established method for implementing suspension instructions and reduces rather than increases administrative burden.  Although the Government's declarant is undoubtedly knowledgeable regarding agency operations, implementation of such parameter-based instructions ultimately turns on system configuration and programming functions that are routinely executed within CBP.  It preserves the status quo, maintains the Court's jurisdiction, and prevents the fixing and collection of disputed tariffs while the legality of those tariffs is adjudicated.

### CONCLUSION

For these reasons, the Court should reject the Government's argument that post-liquidation reliquidation provides an adequate remedy and that suspension of liquidation is administratively infeasible. Plaintiffs respectfully request that the Court grant the motion for a preliminary injunction and enter the proposed order directing CBP to suspend liquidation of entries meeting the HTS and importer-of-record parameters set forth in the attached Order.

        Respectfully submitted,


        /s/ Aaron Marx_____
        Daniel Cannistra
        John Brew
        Daniel W. Wolff
        Robert LaFrankie
        Aaron Marx
        Valerie Ellis
        O. Simeon Yerokun

        CROWELL & MORING LLP
        1001 Pennsylvania Avenue, NW
        Washington, DC 20004
        Tel. (202) 624-2751
        amarx@crowell.com

        *Counsel for Consolidated Plaintiffs*

Dated: December 12, 2025

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE**
**GARY S. KATZMANN, JUDGE, TIMOTHY REIF, JUDGE, JANE A. RESTANI, JUDGE**

| | |
|---|---|
| AGS COMPANY AUTOMOTIVE SOLUTIONS, et al.<br><br>                        Plaintiffs,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>                        Defendants. | Consol. Court. No. 25-00255 |

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Upon consideration of Plaintiffs' Motion for a Preliminary Injunction, Defendants' response, Plaintiffs' reply, the arguments of counsel, and all other papers and proceedings in this action, and upon finding that Plaintiffs have demonstrated (1) a likelihood of success on the merits, (2) irreparable harm absent injunctive relief, (3) that the balance of hardships favors an injunction, and (4) that the public interest supports the preservation of the Court's ability to grant effective relief, it is hereby:

ORDERED that Plaintiffs' Motion for a Preliminary Injunction is GRANTED; and it is further

ORDERED that the U.S. Department of Homeland Security, U.S. Customs and Border Protection ("CBP"), and all persons acting under their direction or control are enjoined from liquidating any entry that meets the following parameters:

1.     HTS Classification: The entry is classified under an HTS provision subject to tariffs imposed pursuant to the International Emergency Economic Powers Act ("IEEPA"), as identified in Exhibit A accompanying Plaintiffs' Motion for Preliminary Injunction; and

2.     Importer of Record: The importer for the entry is one of the Plaintiffs in this consolidated action, identified by the importer-of-record numbers to be provided to the Court under seal;

        and it is further

  ORDERED that for any entry meeting the parameters above, liquidation shall be suspended pending final disposition of this action, including all appeals, unless otherwise ordered by the Court; and it is further

  ORDERED that this injunction shall take effect upon entry of this Order and shall remain in effect until the Court enters final judgment or until further order of the Court.

  SO ORDERED.

  Dated: _____

  New York, New York